# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>                    **Plaintiff**<br><br>        v.<br><br>RICHARD C. ANGINO; ANGINO<br>LAW FIRM, P.C. formerly known<br>as Angino & Rovner; and<br>GLORIA TROSTLE, as<br>administratrix of the Estate<br>of David A. Trostle,<br>                    **Defendants** | No. 3:17cv1193<br><br>(Judge Munley) |
| BIO-MEDICAL APPLICATIONS<br>OF PENNSYLVANIA, INC.,<br>            **Interpleader Plaintiff**<br><br>        v.<br><br>UNITED STATES OF AMERICA;<br>CENTERS FOR MEDICARE AND<br>MEDICAID SERVICES; RICHARD<br>C. ANGINO, ESQUIRE; ANGINO<br>LAW FIRM, P.C. f/k/a Angino &<br>Lutz P.C. f/k/a Angino & Rovner,<br>P.C.; GLORIA TROSTLE,<br>Individually and as Administratrix<br>of the ESTATE OF<br>DAVID A. TROSTLE,<br>        **Interpleader Defendants** | |

# **MEMORANDUM**

Before the court for disposition is Plaintiff United States of America's (hereinafter "plaintiff") motion for summary judgment in this case where the government seeks reimbursement of Medicare payments made on behalf of David A. Trostle. The parties have briefed their respective positions, and the matter is ripe for disposition.

**Background**

In July 2011, a medical care center telephoned a pharmacy with a prescription for David Trostle, now deceased. (Doc. 37, Plaintiff's Statement of Material Facts (hereinafter "SOF") ¶ 1, Trostle v. Centers for Medicare and Medicaid, 1:16cv156 (M.D. Pa.)). The pharmacy did not dispense the prescription which had been called in, but instead dispensed an incorrect prescription. (Id.) The incorrect medicine caused Trostle to become ill, and he was hospitalized.

Trostle was hospitalized for sixty-six days from July 15, 2011 through mid-September 2011. (Id. ¶ 7). Trostle accumulated nearly $100,000 in health care bills. (Id. ¶ 3). Defendants' insurers, including Medicare, paid these bills. (Id. ¶ 4). Eventually, Medicare paid $84,353.00 of the medical bills related to the plaintiff ingesting the wrong medicine. (Doc. 1, Compl. ¶ 12).

Trostle filed a lawsuit against the pharmacy and the medical care center. (SOF ¶ 2). He was represented by Richard C. Angino, Angino Law Firm, P.C. formerly known as Angino and Rovner, (hereinafter "the Angino Defendants"). (Id.)

As explained more fully below, under the law, Medicare would have to be reimbursed out of the proceeds of the lawsuit. While undergoing settlement talks, Angino Defendants asked Medicare the amount of such charges. (Doc. 1,

Compl. ¶ 13). Instead of indicating the $84,353.00 it had paid, the Centers for Medicare & Medicaid Services (hereinafter "CMS") reported initially that it had paid $725.00. (Id. ¶ 14). Subsequently, CMS indicated that this amount had increased to $1,212. (Id. ¶ 14).

The Angino Defendants were told the lien was $1212.00 in May 2014 as they prepared for settlement negotiations. This amount, which CMS provided, did not include payment for over $80,000.00 in bills that were incurred by Trostle approximately three years earlier and paid by Medicare two years earlier. (Doc. 39, Pl.'s Supp. Br. at 14). Evidently relying on $1212.00 being the full amount of the lien, the parties to the underlying lawsuit reached a settlement agreement two months later in July 2014. (Id.)

After being notified of the settlement, Medicare reviewed its records and then determined that $84,353.00 in medical charges had been paid relating to the decedent's injuries. (Doc. 1, Compl. ¶ 17). Medicare reduced this amount by its share of the attorneys' fees, as required by law, and determined that the decedent owed $53,295.00 from the settlement proceeds. (Id.) It notified the Angino Defendants and Trostle that $53,295.00 was due from the settlement proceeds and payable within sixty (60) days from August 14, 2014. (Id.) The defendants never paid and this lawsuit eventually followed.

The complaint raises one cause of action for Recovery of Medicare Secondary Payments under 42 U.S.C. § 1395y(b)(2)(B); 42 C.F.R. § 411.24(g). Subsequently, the plaintiff filed the instant motion for summary judgment. The matter is fully briefed and ripe for disposition.

**Jurisdiction**

As this matter is brought pursuant to a federal statute, and the plaintiff is the United States of America, this court has jurisdiction pursuant to 28 U.S.C. § 1345; 42 U.S.C. § 1395y(b)(2) and 42 C.F.R. Part 411.

**Standard of review**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine

4

the facts in the light most favorable to the party opposing the motion.  Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law.  Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial.  Id. at 324.

**Discussion**

  The Plaintiff United States moves for summary judgment on the basis that as a matter of law it is entitled to $84,353.00 plus interest.  According to the plaintiff, it is not limited to recovering $53,295.14 as the defendant suggests.  Defendants claim that several questions of fact exist which make summary judgment inappropriate.  After a careful review, we agree with the defendants.

First, a review of the Medicare program is important to understanding the issues of this case. The Medicare program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395zz, provides federal funding for medical care for the aged and disabled. <u>Butler Cnty Mem. Hosp. v. Heckler</u>, 780 F.2d 352, 354 (3d Cir. 1985). The program consists of two parts. Part A is an insurance program covering inpatient hospital care and extended post-hospital or home health care. Part A is funded by Social Security payroll contributions. <u>Id.</u> citing 42 U.S.C. §§ 1395c-1395i-2. Part B provides insurance benefits for physician services and outpatient services and supplies. Part B is funded by individual premium payments and federal contributions. <u>Id.</u> citing §§ 1395j-1395w.

The Medicare Secondary Payer Statute ("MSPS") provides:

> A primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service.

42 U.S.C. § 1395y(b)(2)(B)(ii).

Lawsuits for Medicare reimbursement under this statute may be brought against insurance providers as well as "any entity, including a **beneficiary**, provider, supplier, physician, **attorney**, State agency or private insurer that received a third party payment." 42 C.F.R. § 411.24(g) (emphasis added).

6

Hence, plaintiff filed the instant lawsuit to recover reimbursement from Trostle's Estate and attorney for the Medicare payments it made for David Trostle's care. The issue that the parties dispute is not whether plaintiff is entitled to reimbursement but the amount of reimbursement to which they are entitled. If the amount goes beyond $53,295.14, there is also the question of who makes the reimbursement.

The government insists that they are entitled to $83,353.00 plus interest. (Doc. 1, Complaint *Ad Damnum* Clause). The defendants argue that the government is only entitled to, at most, $53,295.14, which defendants are agreeable to paying. (Doc. 40, Defs.' Opp'n Br. at 2).

In a prior case, which was filed in the United States District Court, current defendants challenged the amount current plaintiff claimed was due, that is, $53,295.14. See 2016 WL 6082131 (M.D. Pa. Oct. 17, 2016) (Caldwell, J.). The plaintiff in that case was Gloria Trostle and she was represented by the Angino Defendants. Id. The court held that it did not have jurisdiction because Trostle had not exhausted her administrative remedies. Id. at Doc. 14, Memo. dated Oct. 17, 2016. The Third Circuit Court of Appeals affirmed the district court's decision. Trostle v. Centers for Medicare and Medicaid Servs., 709 F. App'x 736 (3d Cir. 2017).

The plaintiff thus argues that it calculated the amount owed, and the defendants lost their challenge of that amount, therefore, defendants owe the money. Not only do defendants owe the $53,295.12, but because of the circumstances, the plaintiff argues that it is justified in adding back in attorney's fees which were previously deducted and adding interest. Thus, the total now owed is $83,353.00.

Defendants, on the other hand, argue that although they are barred from challenging the amount of $53,295.14 -which they are willing to pay - they can challenge the higher amount that plaintiff now asserts is due. Additionally, defendants claim that questions of fact exist as to who, if anyone, is liable for any excess money which is owed, one of the defendants or a third party.

First, we will discuss whether any questions of fact exist with regard to plaintiff amending the amount of its lien from $53,295.14 to over $80,000. When a Medicare recipient hires an attorney to seek damages for an injury, the amount of the Medicare lien may change. If the patient is successful in obtaining an award or settlement from the tortfeasor, then the Medicare lien is reduced by an amount to adjust for the attorney's fees the patient had to incur to obtain the award.

Here, Trostle hired Defendant Angino to sue the tortfeasor, and Trostle and the tortfeasors eventually reached a settlement. Then Medicare calculated the

amount of the lien as $83,353.00 and reduced it to $53,295.14 to take into account Trostle's attorney's fees in pursuing the settlement.

The law provides that where Medicare "must file suit" to recover on the lien, then they need not deduct attorney's fees from the lien amount. 42 C.F.R. § 411.37(e). Here, Medicare argues that this law applies in the instant case, and the full lien amount of $83,353 need not be reduced for attorney's fees.

Defendants, on the other hand, argue that Medicare did not need to file suit to collect on the lien. Defendants indicate that since the Third Circuit rejected their appeal and confirmed the amount owed, they have been willing to pay that amount. (Doc. 40-2, Defs'. Exh. B, ¶ 12). To this end, defendants had set aside $53,295.14 prior to the distributing the settlement proceeds. (Id. ¶ 8). After the Third Circuit reached its decision, however, instead of attempting to settle the lien, plaintiff pursued litigation and increased the amount owed. (Id. ¶ 13).[1] We agree with the defendants that a question of fact exists as to whether or not the plaintiff had to pursue litigation to collect the amount due and justify raising the amount due.

---

[1] Defendants assert that the plaintiff pursued the instant lawsuit after the Third Circuit reached its decision. Our review of the docket and the Third Circuit decision reveals that plaintiff actually filed this lawsuit before the Third Circuit made its decision. The Third Circuit decision is dated October 5, 2017 and plaintiff filed this case on July 10, 2017.

9

Plaintiff argues that the fact that the United States sued is sufficient to establish, or the equivalent of, the "must file" suit requirement of the statute. Plaintiff cites to several cases from courts which are non-binding on us, to establish this assertion. We find, however, that at least with the facts which we are presented with, that whether or not the plaintiff had to pursue litigation is a question of fact. As a genuine issue of material fact exists, summary judgment is inappropriate.[2]

**Conclusion**

For the forgoing reasons, we find that genuine issues of material fact exist. Thus, summary judgment is inappropriate and the plaintiff's motion will be denied. An appropriate order follows.

**Date:Feb. 26, 2019**                                        **BY THE COURT:**

                                                                            **s/ James M. Munley**
                                                                            **JUDGE JAMES M. MUNLEY**
                                                                            **United States District Court**

---

[2] As the defendants point out, other questions of fact may exist, such as who must pay any amount over $53,294.14, especially if the proceeds of the settlement have been spent. For example, the Angino Defendants assert that a settlement and distribution agreement indicates that they would not be liable for any liens, and the party who would be liable for the liens is now deceased.